UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEMAUN BUTLER,

        Petitioner,

                                                                           Case No. 16-13570

v.

                                                                            HON. AVERN COHN

THOMAS MACKIE,

        Respondent.

_____/

**MEMORANDUM AND ORDER
DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY**

I.  Introduction

This is a habeas case under 28 U.S.C. § 2254. Michigan prisoner Demaun Butler ("Petitioner") was convicted at a bench trial of first-degree home invasion, M.C.L. § 750.110a(2), and second-degree criminal sexual conduct, M.C.L. § 750.520c(1)(c) (sexual contact during the commission of a felony). He was sentenced as a fourth habitual offender, M.C.L. § 769.12, to concurrent terms of 11 to 20 years imprisonment and 9 to 15 years imprisonment on those convictions in 2014. Petitioner raises claims concerning the non-production of a witness/due diligence and the admission of that witness's prior preliminary examination testimony, the sufficiency of the evidence to support his convictions, and the accuracy of his presentence information report. For the reasons that follow, the petition will be denied for lack of merit.

II. Facts and Procedural History

Petitioner's convictions arise from the sexual assault of a woman in her home in Detroit, Michigan on New Year's Day in 2014. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises from an incident occurring at the home that the complainant shared with her three children and her roommate, Samantha Antisdel. On the evening of the incident, the complainant and her three children; Samantha and her four children (including her son, 16–year–old Jordan Antisdel); Jordan's girlfriend, Stacy Grimm; and Samantha's and Jordan's cousin, "Steve," were celebrating the New Year's holiday at the complainant's residence.
>
> The complainant became intoxicated and "passed out" around 10:00 p.m. that evening. As a result, she has no recollection of the evening's events independent from the stories that she heard from other people. However, early in the morning, she awoke in her bedroom "feeling violated" and walked out to the living room to observe Samantha, Jordan, Steve, and Stacy "beating up" a complete stranger, who was lying on the floor. Samantha and Jordan would later explain that the stranger was defendant, and that they had caught defendant "sexually molesting" the complainant while she was unconscious. That morning, though, the complainant did not see defendant's face as she watched him break free from his assailants and run naked from her house.
>
> At trial, Jordan testified that he had met defendant, a stranger, at a party store on New Year's Eve and invited him back to the complainant's house to hang out. He said defendant agreed to come and played cards with Samantha and Steve for an hour or so before Samantha suggested that they go to a neighbor's house. Samantha, who did not appear at trial but testified at the preliminary examination, confirmed that defendant was with them that evening and that he accompanied her, Jordan, Stacy, and Steve to a neighbor's house. However, she claimed that defendant was the one to suggest that they visit the neighbor's house. Jordan said that they were at the neighbor's home for about 15 minutes, while Samantha thought it was approximately an hour, but they both agreed that, at some point, they realized that defendant was no longer with them.
>
> When they returned to the complainant's home, all of the children were sleeping soundly in the living room. However, minutes later, Samantha's

2

trip to the bathroom was interrupted when she looked through the complainant's open bedroom door and saw defendant inside. She screamed, and Jordan and Stacy rushed to the bedroom. Jordan and Samantha both testified that they saw defendant lying on top of or next to the complainant with his pants pulled down and his genitals between the complainant's legs while making a thrusting motion. The complainant's underwear had been removed and was lying on the floor. They pulled defendant away from the complainant and into the living room, where a physical altercation ensued. The fight was underway when the complainant awoke and emerged from the bedroom. During the altercation, Samantha and Jordan removed defendant's clothing, intending to preserve evidence of his DNA. Defendant ultimately left the house naked, and the police were called.

Defendant testified on his own behalf at trial and maintained his innocence. He indicated that Jordan had stopped him while he was at the party store and asked him to find some cocaine. Defendant brought cocaine back to Samantha at the complainant's house and stayed with the group for a few hours while she used it. According to defendant, they went to his acquaintance's house later that evening to acquire more cocaine at Samantha's request and returned to the complainant's home together. Once there, Samantha demanded her money back for the first batch of "bad" cocaine, and defendant refused. Subsequently, the group physically attacked him and stole his clothes, so he threatened them with future violence. He then fled after Samantha told him to leave.

At trial, his defense theory was that Samantha and Jordan were fabricating the sexual assault in order to protect themselves from defendant's violent threats. Additionally, he claimed that he never returned to the complainant's home on his own and was never inside the complainant's bedroom.

People v. Butler, No. 322690, 2015 WL 8538749, *1-2 (Mich. Ct. App. Dec. 10, 2015) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions, but remanded for the ministerial task of correcting the presentence report. Id. at *2-9. Petitioner filed an

application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Butler, 499 Mich. 970 (2016).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I. The trial court erred in finding that the police and prosecutor exercised due diligence to procure key prosecution witness, Samantha Antisdel, for trial and the admission of Antisdel's preliminary examination testimony in lieu of her live testimony violated his constitutional right to confrontation and was not harmless error.

II. The evidence at trial was insufficient to support his convictions for first-degree home invasion and second-degree criminal sexual conduct.

III. The presentence report must be corrected where it contains information that directly conflicts with the testimony of the prosecution's own witness and the trial court's express findings of fact and the trial court did not consider that inaccurate information at sentencing.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n. 7; Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.; see also White v. Woodall, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore

cannot form the basis for habeas relief under AEDPA." Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam); see also Lopez v. Smith, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002). Lastly, habeas review is also "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Due Diligence and Confrontation Claim

Petitioner first says that he is entitled to habeas relief because the trial court erred in finding that the police and the prosecutor exercised due diligence in attempting to produce Samantha Antisdel (Samantha) as a witness at trial and the trial court violated his confrontation rights by admitting her prior preliminary examination testimony. Petitioner is not entitled to relief on this claim, as explained below.

A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal law does not require the production of so-called res gestae witnesses. See Johnson v. Hofbauer, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce res gestae witnesses constitutes a matter of state law whose enforcement is beyond the scope of federal habeas review. Collier v. Lafler, 419 F. App'x 555, 559 (6th Cir. 2011); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (habeas relief does not lie for perceived errors

7

of state law). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." Atkins v. Foltz, 856 F.2d 192 (Table), 1988 WL 87710, *2 (6th Cir. Aug. 24, 1988) (citing United States v. Bryant, 461 F.2d 912, 916 (6th Cir. 1972)).

Here, Petitioner neither alleges nor establishes that Samantha would have provided exculpatory testimony - and the record indicates the opposite. Thus, whether the prosecutor exercised due diligence in attempting to locate Samantha and produce her at trial is a state law issue outside the scope of federal habeas review. Collier, 419 F. App'x at 559. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002).

However, Petitioner also asserts a violation of his confrontation rights. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him or her. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315 (1973). In Crawford v. Washington, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. The proper inquiry for deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the

8

accused in investigating and prosecuting the crime." United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2005). Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. Crawford, 541 U.S. at 54.

The Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross-examination at the prior proceeding. See Mattox v. United States, 156 U.S. 237 (1895) (prior trial testimony); Barber v. Page, 390 U.S. 719, 725-26 (1968) (preliminary hearing testimony). A witness is 'unavailable' for purposes of the exception to the confrontation requirement if the prosecution has made a good faith effort to obtain the witness's presence at trial. Barber, 390 U.S. at 724-25; Winn v. Renico, 175 F. App'x 728, 733 (6th Cir. 2006). "The lengths to which the prosecution must go to produce a witness, however, is a question of reasonableness." Winn, 175 F. App'x at 733 (citing California v. Green, 399 U.S. 149, 189, n. 22 (1970) (concurring opinion, citing Barber)). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness....The prosecution bears the burden of proof in this regard. Id. (citations omitted).

The Michigan Court of Appeals considered this claim under state and federal law and denied relief. The court of appeals concluded that the police and prosecutor made reasonable efforts to locate and produce Samantha and that Petitioner had sufficient opportunity to question her at the preliminary examination such that the

admission of her prior testimony did not violate Petitioner's confrontation rights. The court of appeals explained in relevant part:

> The prosecutor, officer in charge, and investigator for the Wayne County Prosecutor's Office testified regarding the numerous attempts that were made to locate Samantha. The prosecutor called each telephone number available for Samantha, discovering that all were disconnected except for a phone that Samantha had given to Jordan. Police officers searched for possible addresses using two separate law enforcement databases, visited several different residences, and questioned at least three individuals who knew Samantha—including Samantha's son, Jordan—about Samantha's whereabouts. None of them knew Samantha's whereabouts, and Jordan did not know how to find his homeless mother. Jordan offered to assist by attempting to communicate with her using Facebook, but Samantha did not respond to Jordan's repeated attempts to contact her. Efforts to locate Samantha at local morgues, jails, and hospitals failed. The officers continued to seek out Samantha even after discovering that she was homeless and transient, attempting to reach her by phone at multiple auction houses in Pontiac after learning through her son's trial testimony that she may be working at one of those locations.
>
> Contrary to defendant's claim on appeal, the fact that the prosecutor and police officers began searching for Samantha only two weeks before trial does not make their efforts insufficient, especially given the prosecutor's testimony that she printed subpoenas and sought the officers' assistance in locating Samantha immediately upon her assignment to the case. The record indicates that Samantha's living arrangements were unstable and ever-changing, and it does not seem likely that any earlier efforts would have been more fruitful, especially given Jordan's testimony that he had not seen his mother in the two months before the trial and had only talked to her "every once in a while." Indeed, even Jordan's attempts to reach his mother had failed. Additionally, there is no indication that the prosecution encountered difficulty in securing Samantha's presence prior to the preliminary examination, such that it would have expected that earlier or more intensive efforts were required.
>
> We recognize that the prosecution may have pursued additional avenues in attempting to locate Samantha. However, again, "due diligence" is the attempt to do everything reasonable to obtain the presence of a witness, not everything possible. The trial court considered the facts and circumstances as they existed in this case and determined that the prosecution had done everything reasonable to locate Samantha.

> Likewise, we conclude that the trial court's finding of due diligence was not clearly erroneous in the instant case.
>
> \*\*\*
>
> At trial, the prosecution sought to introduce Samantha's sworn testimony from the preliminary examination, at which defendant's previous attorney was given the opportunity to cross-examine her. Notably, defendant's trial counsel admitted, despite objecting to the admission of Samantha's previous testimony, that prior counsel had cross-examined Samantha and "did a very good job." Likewise, the record shows that prior counsel extensively cross-examined Samantha on a wide range of subjects at the preliminary examination, including the particular individuals present on the night of the offense, how Samantha met defendant, how long defendant was present at the complainant's home, the type and amount of alcohol that Samantha consumed and Samantha's level of intoxication throughout the evening, the complainant's demeanor during the events, whether Samantha previously knew the neighbor before defendant took the group to the neighbor's house, the circumstances and duration of their visit at the neighbor's house, and the specific circumstances of the sexual assault when Samantha returned home. Defense counsel then recross-examined Samantha regarding her failure to lock the front door of the complainant's house when they went to the neighbor's house. The fact that defendant's trial counsel may have posed different questions than those raised at the preliminary examination does not negate the fact that defendant had the opportunity to effectively cross-examine Samantha at the preliminary examination, at which time he had a motive similar to that at trial, thereby fulfilling the requirements of MRE 804(b)(1).
>
> As such, defendant has failed to establish that he lacked a reasonable opportunity to test the truth of Thornton's testimony. In addition, the speculative assertions raised by defendant on appeal regarding the believability of Samantha's testimony and the purported reasons for Samantha's failure to appear at trial do not undermine the fact that defendant's right of confrontation was not violated here given his previous opportunity to effectively cross-examine Samantha.

Butler, 2015 WL 8538749 at *3-6 (citations omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the police and the prosecution made reasonable efforts to produce Samantha to testify at trial. The prosecution issued a witness subpoena and called all available telephone numbers for

Samantha. The police began searching for Samantha two weeks before trial. The searched for addresses on law enforcement databases, visited several residences, and questioned several people, including Samantha's son. None of her acquaintances knew her location or were able to contact her as she was homeless and transient. The police also checked local morgues, jails, and hospitals and tried to reach her by telephone at auction houses where she was possibly working. See 6/2/14 Trial Tr., pp. 4-27. Such efforts, although unsuccessful, were duly diligent. Samantha was thus unavailable for purposes of Petitioner's trial.

The record further indicates that Petitioner had the same motive and opportunity for questioning Samantha at the preliminary examination and that defense counsel took advantage of that opportunity. See 1/22/14 Prelim. Ex. Tr., pp. 34-44. Petitioner's trial counsel even admitted that former counsel "did a very good job" cross-examining Samantha. See 6/2/14 Trial Tr., p. 34. Because Samantha was unavailable at the time of trial and Petitioner had ample opportunity to cross-examine her at the preliminary examination, the trial court did not violate Petitioner's confrontation rights by admitting her prior preliminary examination testimony at trial. Habeas relief is not warranted on this claim.

## B. Insufficient Evidence Claim

Petitioner also says that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence

claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).  Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009).  Furthermore, the Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n. 16).

A federal court views this standard through the framework of 28 U.S.C. § 2254(d).  Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002).  Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009).  "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v.

Lonberger, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." Matthews, 319 F.3d at 788-89.

Under Michigan law, the elements of first-degree home invasion are: (1) that the defendant either broke and entered a dwelling or entered a dwelling without permission, (2) that defendant either intended when entering to commit a felony, larceny, or assault in the dwelling or at any time when entering, present in, or exiting the dwelling committed a felony, larceny, or assault; and (3) while the defendant was entering, present in, or exiting the dwelling either the defendant was armed with a dangerous weapon or another person was lawfully present in the dwelling. People v. Wilder, 485 Mich. 35, 43 (2010); M.C.L. § 750.110a(2). The elements of second-degree criminal sexual conduct, as charged in this case, are: (1) sexual contact (2) under circumstances involving the commission of any other felony. People v. Ward, 206 Mich. App. 38, 40-41 (1994); M.C.L. § 750.520c(1)(c). "'Sexual contact' includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner ...." M.C.L. § 750.520a(q). "Intimate parts" include "the primary genital area, groin, inner thigh, buttock, or breast of a human being." M.C.L. § 750.520a(e).

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. People v. Kern, 6 Mich. App. 406, 409 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, People v.

14

Jolly, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, Kern, 6 Mich. App. at 409, see also People v. Johnson, 146 Mich. App. 429, 434 (1985), and the defendant's intent or state of mind. People v. Dumas, 454 Mich. 390, 398 (1997); see also People v. Nowack, 462 Mich. 392, 402-03 (2000).

With these standards in mind and applying the Jackson standard, the Michigan Court of Appeals denied relief on this claim. The court of appeals explained in relevant part:

> First, the record includes sufficient evidence to support defendant's first-degree home invasion conviction. . . . On appeal, defendant only contests the first element, i.e., whether he entered the dwelling without permission.
>
> Defendant argues that he was an invited guest at the complainant's home and that he never forced his way into the dwelling, noting that a police officer who testified at trial indicated that there was no evidence of forced entry after the incident. Consistent with the claim, defendant testified at trial that he returned to the complainant's home after the group went to the neighbor's house together, accompanying them back inside the dwelling as their guest. Defendant argues that he never reentered the home alone and never saw the inside of the complainant's bedroom that evening.
>
> However, Samantha and Jordan both testified that they noticed defendant's absence at the neighbor's party, and that Samantha was the first to discover defendant in the complainant's bedroom when they returned home. Additionally, they both testified that no one had given defendant permission to reenter the complainant's home on his own later that evening. Likewise, the testimony clearly indicated that the complainant was not conscious to grant defendant permission to reenter her home or enter her bedroom. We are required to consider the evidence in the light most favorable to the prosecution and to resolve all conflicts in the evidence in favor of the prosecution. Unger, 278 Mich. App at 222. Likewise, we may not disturb the trial court's credibility determinations on appeal. Id.
>
> Thus, despite defendant's claims, the testimony presented at trial is sufficient to support the trial court's finding that defendant entered the complainant's home without permission and, therefore, committed

first-degree home invasion. See MCL 750.110a(2); Wilder, 485 Mich. at 43.

Additionally, sufficient evidence was presented at trial to support defendant's CSC 2 conviction. . . . Despite defendant's repeated denial of having any contact, physical or otherwise, with the complainant on the evening of the incident, Jordan and Samantha both testified that they saw defendant laying on top of or next to the complainant in the complainant's bed. Defendant's pants were pulled down, and he was touching the complainant's intimate parts with his genitals. The trial judge specifically found Samantha's and Jordan's version of events to be credible. See Unger, 278 Mich. App at 222. Given this finding, the trial judge certainly could have inferred that defendant touched the complainant's intimate parts with his genitals for sexual arousal or gratification. See Williams, 268 Mich. App at 419 (stating that "[c]ircumstantial evidence and reasonable inferences that arise from such evidence" can constitute sufficient evidence of the elements of a crime).

Therefore, viewed in the light most favorable to the prosecution, there was sufficient evidence to support defendant's CSC 2 and first-degree home invasion convictions.

Butler, 2015 WL 8538749 at * 7-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to first-degree home invasion, the record supports the trial court's finding that Petitioner entered the victim's home without permission. Jordan Antisdel testified that he initially brought Petitioner to the house, but he did not expressly or impliedly give him permission to re-enter the house once he left. See 5/28/14 Trial Tr., p. 66. Christina Harris, Jordan Antisdel, and Samantha all testified that Petitioner did not have permission to re-enter the house. See 5/28/14 Trial Tr., pp. 52, 73; 6/4/14 Trial Tr., p. 19. Such testimony was sufficient to prove that Petitioner re-entered the victim's house without permission beyond a reasonable doubt.

Second, as to the second-degree criminal sexual conduct conviction, the record support's the trial court's finding that Petitioner had sexual contact with the victim when he re-entered the house without permission. Both Jordan Antisdel and Samantha testified that they walked into Christina Harris's bedroom and observed Petitioner and Harris lying on the bed and that Petitioner's pants and underwear were pulled down to his knees. See 5/28/14 Trial Tr., p. 76; 6/4/14 Trial Tr., p. 16). Jordan Antisdel also testified that Petitioner was "sexually molesting" Harris, that Petitioner was making a thrusting motion with his hips while on top of Harris, that he could see Petitioner's "genital area" going in and out of Harris's "genital area," and that Harris's underwear was off. See 5/28/14 Trial Tr., pp. 77–78, 103. Such testimony, and reasonable inferences therefrom, was sufficient to establish beyond a reasonable doubt that Petitioner (while illegally in the home) had sexual contact with Harris and that he did so for sexual gratification.

Petitioner challenges the inferences the trial court (sitting as the fact-finder) drew from the testimony presented at trial and the trial court's credibility determinations. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. Cavazos, 565 U.S. at 7; Jackson, 443 U.S. at 326; Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The trial court's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, particularly the

17

testimony of Jordan Antisdel and Samantha, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the crimes of first-degree home invasion and second-degree criminal sexual conduct. Habeas relief is not warranted on this claim.

## C. Presence Report Claim

In his final claim, Petitioner contends that he is entitled to habeas relief because the presentence report contains inaccurate information. The record, however, indicates that the Michigan Court of Appeals rectified the claimed errors on direct appeal by remanding the case to the trial court "for the ministerial task of striking the statements challenged by defendant and forwarding an updated copy of defendant's PSIR to the Michigan Department of Corrections." Butler, 2015 WL 8538749 at *7. Given the state court's decision in Petitioner's favor, this claim is moot. Habeas relief is not warranted on this claim.[1]

## V. Conclusion

For the reasons stated, the Michigan Court of Appeals decision denying Petitioner's claims for relief is neither contrary to Supreme Court precedent or based on an unreasonable determination of the facts. Accordingly, the petition is DENIED.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Slack v. McDaniel, 529 U.S.

---

[1] Petitioner concedes in his reply that Michigan Court of Appeals rectified the error.

18

473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, a certificate of appealability is DENIED.

SO ORDERED.

                                                 S/Avern Cohn
                                                 AVERN COHN
                                                 UNITED STATES DISTRICT JUDGE

Dated: 5/9/2018
      Detroit, Michigan